UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALTAF CHOWDHURY, on behalf of himself and
all others similarly situated,

                Plaintiff,

      -against-

PETER LUGER, INC., and PETER LUGER OF LONG
ISLAND, INC., and AMY RUBENSTEIN, in her
individual and professional capacities, and
MARILYN SPIERA, in her individual and professional
capacities, and COSTA ARAMA, in his individual
and professional capacities,

                Defendants.
------------------------------------------------------------------X

**COMPLAINT**

**Docket No.: 14-cv-5880**

Jury Trial Demanded

      ALTAF CHOWDHURY ("Plaintiff"), on behalf of himself and all others similarly situated ("FLSA Plaintiffs" or "Rule 23 Plaintiffs"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against PETER LUGER, INC., and PETER LUGER OF LONG ISLAND, INC. (collectively as "Defendant Peter Luger"), and AMY RUBENSTEIN ("Defendant Rubenstein"), MARILYN SPIERA ("Defendant Spiera"), and COSTA ARAMA ("Defendant Arama") (all, together, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

    1.    This is a civil action for damages and equitable relief based upon the Defendants' violations of Plaintiff's, FLSA Plaintiffs', and Rule 23 Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii)

1

the FLSA's minimum wage provisions, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 146-1.4; (iv) the NYLL's minimum wage provisions, NYLL § 652(1); (v) the NYLL's requirement that employers pay wages to their employees pursuant to the terms of employment, NYLL §§ 190, 191 and 663(1); (vi) the NYLL's requirement that employers pay their employees an additional one hour's pay at the minimum wage rate if their employees' spread of hours exceeds ten hours in a workday, NYLL § 652; 12 NYCCRR § 146-1.6; (vii) the NYLL's requirement that employers provide a weekly stipend, or "uniform maintenance pay," when they require their employees to wear certain uniforms, 12 NYCCRR § 146-1.7; (viii) the NYLL's requirement that employers reimburse their employees for the costs of purchasing required uniforms, 12 NYCCR § 146-1.8, (ix) the NYLL's requirement that employers provide on each payday certain wage statements to their employees containing specific categories of accurate information, NYLL § 195; and (x) the common law of the State of New York prohibiting the conversion of another's property.

2.　　In addition, in this civil action, Plaintiff, individually, seeks relief for the Defendants' violations of his rights guaranteed to him by: (xi) the provisions against race discrimination set forth in 42 U.S.C. § 1981 ("Section 1981"); (xii) Section 1981's provisions prohibiting the retaliation against an individual for making a complaint of race discrimination; (xviii) the provisions against race discrimination set forth in the New York State Human Rights Law ("NYSHRL"), Executive Law § 296; (xiv) the NYSHRL's provisions against national origin discrimination; (xv) the NYSHRL's provisions against religious discrimination; (xvi) the NYSHRL's provisions prohibiting employers from retaliating against an employee for making a complaint of discrimination; (xvii) the NYSHRL's prohibition against aiding, abetting, and/or

inciting acts of unlawful discrimination; (xviii) the provisions protecting employees who make requests for leave pursuant to the Family and Medical Leave Act ("FMLA") from having their FMLA rights unlawfully interfered with, 29 U.S.C. § 2615; (xix) the FMLA's provisions prohibiting employers from retaliating against an employee for opposing his or her employer's unlawful FMLA practices; and (xx) any other claim(s) that can be inferred from the facts set forth herein.[1]

3.      Plaintiff brings the action because of Defendants' mind-boggling abject disdain for United States and New York labor and employment laws and because of the deplorable way in which they treated Plaintiff, a server for one of their well-known steakhouse restaurants. Specifically, Defendants routinely violated the minimum wage and overtime provisions of the FLSA, the NYLL, and the NYCCRR. First, Defendants completely refused to compensate their servers at any rate of pay, let alone their regular rates of pay, the minimum wage rate of pay, or their overtime rates of pay, for coming into work thirty minutes before their shifts formally started to perform necessary tasks, called "side jobs." Second, Defendants attempted to utilize a "tip credit" to pay their servers less than the statutorily-required minimum wage and overtime rates of pay. However, their use of this tip credit was improper because they never provided the statutorily-required notice of their intention to take such a tip credit, and because they required their servers to "tip out" non-service employees. The result of Defendants' improper attempt to claims a tip credit is that they grossly underpaid their servers, failing to pay them at the appropriate minimum wage rate for any hour worked, or at the proper overtime rate of pay for hours worked each week in excess of forty, which occurred every week. Third, Defendants

---

[1] Plaintiff is filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") concurrently with the filing of the instant Complaint. Once Plaintiff receives a right to sue letter from the EEOC, he plans to amend the Complaint to add claims for race, national origin, and religious discrimination in accordance with his rights under Title VII of the Civil Rights Act of 1964, as amended.

refused to compensate their servers for the purchasing and maintaining of required uniforms, thus dropping their rate of pay below the minimum wage rate and constituting independent violations of the NYLL.  Furthermore, in addition to the above-mentioned minimum wage and overtime violations, Defendants violated other provisions of the NYLL and the NYCCRR when they required their servers to work shifts that would last as long as thirteen hours from start to finish, yet they refused to provide their servers with the statutorily-required "spread of hours pay."  The Defendants also completely failed to provide their servers with proper wage statements containing specific categories of accurate information on each payday, as the NYLL requires.  Finally, Defendants committed the tort of conversion when they misappropriated the tips rightfully belonging to their servers for Defendants' own use.

4.     In addition to the above-mentioned wage and hour violations, Defendants routinely discriminated against Plaintiff because of his race, national origin, and religion (he is dark-skinned, was born in Bangladesh, and is a devout Muslim) in violation of Section 1981 and the NYSHRL by subjecting him to hostile work environment based on his membership in those protected classes.  Examples of this unlawful discriminatory treatment include Defendants' managers and wait staff: (1) torturing Plaintiff by routinely calling him names such as "terrorist," "Taliban," "Hezbollah," "cab driver," and "sand nigger"; (2) accusing Plaintiff of being one of the Boston Marathon bombers because of his religion, national origin, and skin color; and (3) tricking Plaintiff into eating pork, knowing that doing so was strictly against his religious belief.

5.     Further evidencing their insolent contempt for the law, Defendants, in violation of the FMLA, flatly refused Plaintiff's requests for leave to take care of his newborn child. Defendants repeated requests culminated in him having a conversation with Defendant Rubenstein who, in no uncertain terms, threatened to fire Plaintiff for requesting FMLA leave

("six weeks off is that you want?  I don't know what to say, but I will have to find another server.") and essentially calling Plaintiff a wimp for even asking for FMLA leave ("listen, we've all had babies and we didn't have our mother, and those people took care of their babies for less than six weeks without their mother.").

6.      Finally, when Plaintiff complained about Defendants' above-mentioned unlawful conduct, the Defendants unlawfully retaliated against him by, among other things, substantially reducing the number of his shifts, especially the number of profitable shifts, causing Plaintiff economic harm in the process.

7.      As per Defendants' FLSA, NYLL, and common-law violations, Defendants paid and treated all of their employees in the same manner that they treated Plaintiff.

8.      Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of 29 U.S.C. § 216(b), on behalf of himself and all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.

9.      Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other persons similarly situated during the applicable NYLL limitations period who suffered damages as a result of Defendants' violations of the NYLL and the NYCCRR.

**JURISDICTION AND VENUE**

10.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under: 29 U.S.C. § 201, *et seq*., 29 U.S.C. § 2611, *et seq.*, and 42 U.S.C. § 1981, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

11.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district.

## PARTIES

12.     At all relevant times herein, Plaintiff was a resident of the State of New York and was an employee of Defendant Peter Luger.

13.     At all relevant times herein, Peter Luger, Inc. was a New York-based corporation, with its principal place of business located at 178 Broadway, Brooklyn, New York 11211 (the "Brooklyn location").

14.     At all relevant times herein, Peter Luger of Long Island, Inc. was a New York-based corporation, with its principal place of business located at 255 Northern Boulevard, Great Neck, New York 11021-4401 (the "Great Neck location").

15.     At all relevant times herein, Defendants Rubenstein and Spiera were co-owners of Defendant Peter Luger.  Defendants Rubenstein and Spiera oversaw the day-to-day operations of both Defendant Peter Luger's Brooklyn and Great Neck locations, and they were and are responsible for determining matters with respect to employees' rates and methods of pay and hours worked.  Furthermore, Defendants Rubenstein and Spiera had the power to hire and fire, and they routinely used that power to hire and fire Defendant Peter Luger's employees.

16.     At all relevant times herein, Defendant Arama was the general manager of Defendant Peter Luger's Great Neck location. Defendant Arama oversaw the day-to-day operations of Defendant Peter Luger's Great Neck location and he was also responsible for determining matters with respect to the rates and methods of pay and hours worked and the work schedules and conditions of employment for the employees working at this location.

6

Furthermore, Defendant Arama had the independent authority to hire and fire, and he routinely used this authority power to hire and fire Defendant Peter Luger's employees.

17.     At all relevant times, Defendants are "employers" and "persons" within the meaning of the FLSA, the NYLL, the NYCCRR, Section 1981, the NYSHRL, and the FMLA. The Defendants employ four or more employees. Additionally, Defendants' qualifying annual business exceeds $500,000 and Defendants are engaged in interstate commerce within the meaning of the FLSA as they use goods, equipment, and other materials in the course of their business, much of which originates in states other than New York, sell products across state lines, and cater to a national and international clientele, the combination of which subjects Defendants to the FLSA's minimum wage and overtime requirements as an enterprise. Furthermore, all of Defendants' employees, including Plaintiff and the FLSA Plaintiffs, are individually engaged in interstate commerce, as they all used goods that have been and continue to be moved in interstate commerce and routinely serve customers who come from out of state. This independently subjects Defendants to the overtime and minimum wage requirements of the FLSA with respect to Plaintiffs and the FLSA Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff seeks to bring this suit to recover minimum wage and overtime compensation and liquidated damages from Defendants under the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf as well as on behalf of those in the following collective:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, held the title of "server," "wait staff," "waiter," or "bartender," or any other employee of Defendants for whom Defendants attempted to claim a tip credit, and/or who they paid less than $7.25 per hour, who give consent to file a claim to recover damages for: (1) overtime compensation that

is legally due to them for the time worked in excess of forty hours per week; and (2) minimum wages that are legally due to them ("FLSA Plaintiffs").

19.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were not paid the required minimum wage for all hours worked; (5) were required to work in excess of forty hours in a workweek; (6) were not paid the required rate of one and one-half times their respective regular rates of pay or the minimum wage rates of pay, whichever is higher, for hours worked over forty in a workweek; (7) were never properly informed of Defendants' use of a tip credit; (8) were included in an invalid tip pooling arrangement; (9) were required to wear uniforms; and (10) were not reimbursed for having to purchase and maintain these uniforms, the costs of which reduced their wages below the minimum wage rate and lowered the amount of overtime due to them.

20.     At all relevant times, Defendants were aware of the requirement to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the minimum hourly required rate of pay per hour for all hours worked, as well as the rate of one and one-half times their respective rates of pay or the minimum wage rates of pay, whichever is higher, for all hours worked each workweek above forty, yet they purposefully chose not to do so.

21.     Defendants engaged in these practices to minimize overhead and labor costs and to maximize their profits.

22.     Thus, Plaintiff and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees minimum wage and overtime compensation for all hours worked per workweek in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

23.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), on his own behalf as well as on behalf of those who are similarly-situated who, during the applicable statutory period, Defendants also subjected to violations of the NYLL and the NYCCRR.

24.     Under FRCP 23(b)(3), a plaintiff must plead that:

    a.   The class is so numerous that joinder is impracticable;

    b.   There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

    c.   Claims or defenses of the representative are typical of the class;

    d.   The representative will fairly and adequately protect the class; and

    e.   A class action is superior to other methods of adjudication.

25.     The Rule 23 Class that Plaintiff seeks to identify includes:

Current and former employees of Defendants who, during the applicable NYLL limitations period, held the title of "server," "wait staff," "waiter," or "bartender," or any other employee of Defendants for whom Defendants attempted to claim a tip credit, who: (1) did not receive compensation at the legally-required minimum wage rate of pay for each hour worked; (2) worked in excess of forty hours per week without receiving overtime compensation; (3) were not paid their wages in accordance with their agreed terms of employment; (4) worked a spread of hours that exceeded ten hours in a workday without receiving their spread of hours pay; (5) were not provided with their uniform maintenance pay; (6) were not reimbursed for purchasing the required uniforms; (7) were not provided with the statutorily-required accurate wage statements on each payday; and (8) had their tips wrongfully converted by Defendants for Defendants' own use ("Rule 23 Plaintiffs").

Numerosity

26.     During the previous six years the Defendants have, in total, employed at least forty non-managerial employees that are putative members of this class.

Common Questions of Law and Fact

27.     There are common questions of law and fact that govern the claims that are available to each and every Rule 23 Plaintiff, including but not limited to the following: (1) the duties that Defendants required the Rule 23 Plaintiffs to perform; (2) whether Defendants denied the Rule 23 Plaintiffs compensable time for all hours worked; (3) whether Defendants required the Rule 23 Plaintiffs to work in excess of forty hours per week; (4) whether Defendants compensated the Rule 23 Plaintiffs at the statutorily-required minimum wage rate of pay for each hour worked; (5) whether Defendants compensated the Rule 23 Plaintiffs at the statutorily-required rate of one and one-half times their respective straight-time rates of pay or the minimum wage rates if pay, whichever is higher, for hours worked per week over forty; (6) whether Defendants paid the Rule 23 Plaintiffs their wages in accordance with their agreed terms of employment; (7) whether Defendants properly provided the Rule 23 Plaintiffs with statutorily-sufficient notice that it was using a tip credit; (8) whether Defendants included the Rule 23 Plaintiffs in an improper tip pooling arrangement; (9) whether Defendants required the Rule 23 Plaintiffs to wear uniforms; (10) whether Defendants provided the Rule 23 Plaintiffs with their uniform maintenance pay; (11) whether Defendants reimbursed the Rule 23 Plaintiffs for purchasing their uniforms; (12) whether Defendants furnished the Rule 23 Plaintiffs with the statutorily-required, accurate wage statements on each payday; (13) whether Defendants wrongfully exerted ownership or control over money that rightfully belonged to the Rule 23 Plaintiffs; (14) whether Defendants kept and maintained records with respect to each hour that

the Rule 23 Plaintiffs worked; (15) whether Defendants kept and maintained records with respect to the compensation that they paid to the Rule 23 Plaintiffs; (16) whether Defendants maintain any affirmative defenses with respect to the Rule 23 Plaintiffs' claims; (17) whether Defendants' actions were in willful violation of the NYLL and the NYCCRR; and (18) if so, what the proper measure of damages should be.

Typicality of Claims and/or Defenses

28. As described in the facts section below, Defendants employed Plaintiff as a non-managerial, hourly worker. Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom Plaintiff seeks to represent as Defendants failed to pay the Rule 23 Plaintiffs at the applicable minimum wage and overtime rates of pay and they failed to pay Rule 23 Plaintiffs for all hours worked. Plaintiff and the Rule 23 Plaintiffs enjoy the same rights under the NYLL and the NYCCRR to: (1) be paid at least the statutorily-required minimum wages for each hour worked; (2) be paid the statutorily-required overtime wages for all hours worked per week in excess of forty, calculated at one and one-half times the minimum wage rate of pay or their regular rates of pay, whichever is higher; (3) to get paid their wages in accordance with their agreed terms of employment; (4) to get statutorily-sufficient notice of Defendants' use of a tip credit; (5) to not be included in an improper tip pooling arrangement; (6) to not have to pay for the costs of purchasing and maintaining required uniforms; (7) to be furnished with accurate wage statements on each payday; and (8) to receive the tips to which they are legally entitled and to not have Defendants convert their money for the Defendants' own use.

29. Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and the NYCCRR. Plaintiff and the Rule 23 Plaintiffs have all suffered a similar injury, namely, under-compensation due to

Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiff's claims and/or the Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and/or Defendants' defenses.

Adequacy

30.　Plaintiff worked the same or similar hours as the Rule 23 Plaintiffs throughout his employment with Defendants. Furthermore, Defendants' treatment of Plaintiff was substantially-similar, if not identical, to Defendants' treatment of the Rule 23 Plaintiffs. Defendants failed to pay Plaintiff and the Rule 23 Plaintiffs at the statutorily-required minimum wage rate of pay for all hours worked and Defendants failed to pay Plaintiff and the Rule 23 Plaintiffs at the appropriate overtime rate of pay for all hours they worked in excess of forty in a given workweek. Furthermore, Defendants: failed to provide the required tip credit notice, included Plaintiff and the Rule 23 Plaintiffs in an improper tip pooling arrangement, failed to reimburse Plaintiff and the Rule 23 Plaintiffs for the costs of maintaining and purchasing required uniforms, and failed to provide Plaintiff and the Rule 23 Plaintiffs with the statutorily-required accurate wage statements on each payday.

31.　Plaintiff fully anticipates testifying under oath as to all of the matters raised in this Complaint and as to all matters that may be raised in Defendants' Answer, and also anticipates participating in the discovery process. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have similarly mistreated.

32.　In addition, Plaintiff's attorneys are qualified, experienced, and able to conduct this litigation. Plaintiff's attorneys' practice is concentrated primarily in the field of employment law and they have extensive experience in handling class action lawsuits arising out of employers' violations of the NYLL and the NYCCRR.

12

Superiority

33.     Defendants treated Plaintiff and the Rule 23 Plaintiffs in a substantially similar manner.  As such, the material facts concerning Plaintiff's NYLL and NYCCRR claims are substantially similar, if not identical, to the material facts concerning the Rule 23 Plaintiffs' NYLL and NYCCRR claims.

34.     Any lawsuit brought by one of Defendants' non-managerial hourly employees arising out of Defendants' violations of the NYLL and the NYCCRR would be practically identical to a suit brought by any other employee of Defendants for the same violations.

35.     Accordingly, a class action lawsuit would be superior to any other method for protecting the Rule 23 Plaintiffs' rights.

## BACKGROUND FACTS

36.     Defendant Peter Luger owns and operates two steakhouse restaurants, one in Great Neck, New York and the other in Brooklyn, New York.

37.     Defendants treated their employees the same, regardless of whether or not they worked in the Great Neck or Brooklyn location.  Specifically, regardless of location, Defendants subjected all of their employees to the same FLSA and NYLL violations set forth below.

38.     As stated above, Defendants Rubenstein and Spiera are co-owners of Defendant Peter Luger.

39.     As stated above, Defendant Arama is the general manager of Defendant Peter Luger's Great Neck location.

**I.     Background Facts Relating to Plaintiff's FLSA and NYLL Claims:**

40.     In or around September 2011, Defendants hired Plaintiff to work as a server at their Great Neck, New York location.  Defendants still employ Plaintiff in this capacity.

41.     From 2011 to the present, Defendants paid Plaintiff at a rate of $5.00 per hour.

42.     Throughout Plaintiff's employment, Defendants attempted to claim a tip credit to make up for the difference between the statutory minimum wage and what they paid Plaintiff.

43.     Defendant, however, completely failed to provide Plaintiff with statutorily-sufficient notice, written or otherwise, at either the time of his hire or at any time thereafter, of his regular hourly rate, his overtime hourly pay rate, and the amount of the tip credit to be taken.

44.     Plaintiff generally worked between four and six days each week, and he routinely worked over forty hours each workweek.

45.     Defendants have two shifts, a lunch shift and a dinner shift.   Generally, Defendants' lunch shift starts at 11:00 a.m. and their dinner shift starts at 4:45 p.m.

46.     At the beginning of the workweek, Defendants would put out a schedule setting forth what shifts each server would be working during that particular week.

47.     Seniority was a large factor in determining assignment of shifts.   Servers with more seniority would receive more shifts during the week and they would be assigned to the better (i.e. more profitable) shifts.

48.     Plaintiff, having worked for Defendants for over three years, had seniority over many of their other servers.

49.     Defendants required their servers to sign in when they began their shift and sign out when their shift was finished.

50.     Defendants also required each server to perform "side jobs," such as filling the salt and pepper shakers and sugar bowls throughout the restaurant, cutting butter for the restaurant, carrying linens up from the basement, and washing and setting up tables in the restaurant.

51.     Defendants' servers would have to come in to work thirty minutes before their shifts were scheduled to start to complete these required side jobs.  Defendants, however, would not allow their servers to sign in until their shifts were actually scheduled to start.  In doing so, Defendants deliberately and completely failed to compensate Plaintiff and their other servers for this time worked.

52.     For example, from March 16, 2014 to March 22, 2014, Plaintiff worked a total of ten shifts.  During this week, Defendants paid Plaintiff for 49.75 hours of work, paying him at a rate of $5.00 per hour for the first forty hours worked (an amount below the minimum wage) and paying him at a rate of $9.00 per hour for the remaining 9.75 hours worked (an amount below the rate of one and one-half times the minimum wage).  Before each of his shifts, Defendants required that Plaintiff work an additional thirty minutes before his shift was formally scheduled to start to complete his side jobs, such as bringing up linens from the basement of Defendants' restaurant and filling the salt and pepper shakers throughout the restaurant.  Defendants failed to compensate Plaintiff for these extra five hours of work at any rate of pay, let alone his overtime rate of pay, properly calculated at $12.00, or one and one-half times the appropriate minimum wage rate of $8.00.  In addition, during this week, Plaintiff's spread of hours worked, from the beginning until the end of his work day, exceeded ten hours on three separate occasions. Defendants, however, failed to compensate Plaintiff with an additional hour of pay at the minimum wage rate for those days when his total spread of hours exceeded ten.  This week is indicative of the way Defendants treated and paid Plaintiff throughout his employment.

53.     Additionally, Defendants required their other servers to pool all of their tips each day.  Participation in this tip pooling arrangement was mandatory, meaning that Defendants' servers did not have a choice in the matter.

54.     Once these tips were pooled, the money in the tip pool was distributed evenly amongst the servers.  Accordingly, the tips a server personally received had little connection with the amount he or she would receive following the distribution of the tip pool.

55.     Furthermore, a server was required to indiscriminately share his or her tips with his or her colleagues, regardless of whether or not they helped service that server's tables.

56.     For example, on August 23, 2014, Plaintiff personally received $600 in tips from his tables.  However, at the end of the night and after the tip pool was distributed, Plaintiff came away with only $350 in "tips" as he was required to share his tips with his colleagues, many of whom did not help Plaintiff service his tables.

57.     In addition, up until mid-2014, between January and June of every year, Defendants would deduct $20.00 from the tip pool every day, which would then be given to the kitchen staff at the end of the year.

58.     The kitchen staff works only in the kitchen.  They do not regularly receive tips from Defendants' customers and they do not directly engage in customer service.

59.     Furthermore, Defendants required that their servers wear a uniform consisting of: (1) a long-sleeve white dress shirt; (2) black slacks; (3) black bow ties; and (4) black shoes.

60.     Due to the formal nature of the required uniform, Plaintiff would not wear his uniform when he was not at work.

61.     Due to frequent wearing and other issues arising out of the constant handling of food, Defendants' servers had to purchase and maintain multiples of each article of clothing that Defendants required.

62.     For example, to comply with Defendants' uniform policy, Plaintiff had to maintain the following wardrobe:

a.  Twelve long-sleeve white dress shirts, which would last about two months before a new shirt had to be purchased.  Each shirt cost approximately $25.

b.  Six pairs of black slacks, which would last about three months before new slacks had to be purchased.  Each pair of slacks cost approximately $35.

c.  Six black bow ties, which would not need to be replaced.  Each bow tie cost approximately $12.

d.  One pair of black shoes, which would last about two months before new shoes had to be purchased.  Each pair of shoes cost approximately $85.

63.    Accordingly, in his three years of working for Defendants, Plaintiff spent approximately $11,082 purchasing Defendants' required uniforms.  Defendants refused to reimburse Plaintiff for these purchases.

64.    In addition, these uniforms require special treatment, including, but not limited to: ironing, dry cleaning, daily washing, and commercial laundering.  Accordingly, Plaintiff could not wash and dry his uniform with his other personal garments.  However, Defendants failed to provide Plaintiff with a weekly stipend covering the costs of maintaining these uniforms, as required by the NYLL and the NYCCRR.

65.    Finally, on all occasions when Defendants paid Plaintiff, which took place on a weekly basis, Defendants intentionally did not furnish Plaintiff with a statement that accurately listed Defendants' basis for calculating Plaintiff's minimum wage and overtime rates of pay, his gross wages, and his total hours worked for that week, in violation of the NYLL.

**II.    Background Facts Relating to Plaintiff's Section 1981 and NYSHRL Claims:**

66.    As stated above, Plaintiff is a dark-skinned male who was born in Bangladesh. He is also a devout and practicing Muslim.

67.    While employed with Defendant Peter Luger, Plaintiff's manager, Defendant Arama, his assistant manager, Garry Peteio ("Mr. Peteio"), and his co-workers, in the presence

17

of his managers, subjected him to a hostile work environment because of his race, national origin, and religion.

68.     Indeed, throughout Plaintiff's employment, Defendant Peter Luger's managers bombarded Plaintiff with discriminatory comments, constantly referring to him by names such as "terrorist," "Taliban," "Hezbollah," "cab driver," and "sand nigger."   Additionally, they shortened his name from "Altaf" to "Al" so they could call him "Al-Qaeda," which they did on a frequent basis.

69.     Defendant Arama and Mr. Peteio were among Defendant Peter Luger's managers who routinely participated in torturing Plaintiff with these derogatory terms.

70.     The following are just a few examples that highlight the egregiously discriminatory environment that Plaintiff had to endure on a nearly everyday basis.

71.     In or around 2012, during a busy dinner shift, Plaintiff accidentally spilled milk on Mr. Peteio's shoes while Plaintiff was running around trying to serve his tables.  Plaintiff apologized to Mr. Peteio for his mistake, saying "I'm sorry brother."  Mr. Peteio replied stating "don't call me brother.  Look at your skin color and look at my skin color, you better go get your shoe box and get on your knees and polish my shoes you fucking shoe maker."  Plaintiff, worried about keeping his job, had to humiliatingly polish Mr. Peteio's shoes in front of his colleagues.

72.     On April 15, 2013, the date that the Boston Marathon bombing occurred, Mr. Peteio texted Plaintiff "[w]here you running in Boston," obviously implying that Plaintiff was one of the responsible terrorists because of his religion, national origin, and skin color.  When Plaintiff went into work the next day, Mr. Peteio followed up his discriminatory text by telling Plaintiff that "you can run but you can't hide because you are on the news all day" and by consistently referring to him as "pressure cooker" in the weeks after this tragedy.  On one

occasion, Plaintiff was able to record a co-worker making similar discriminatory comments, stating "Al, you weren't cooking anything downstairs . . . there was no project going bad?" This co-worker was referring to the fact that the Boston Marathon bombers, both of whom are Muslim like Plaintiff, used homemade pressure cooker bombs to carry out their act of terror. Additionally, when the two terrorists' pictures appeared on the first page of the newspaper, Defendant Peter Luger's employees took their pictures and put it on a wall in the restaurant with Plaintiff's name on it.

73. Following the disappearance of the Malaysia Airlines Flight 370 on March 8, 2014, Defendant Peter Luger's managers and employees repeatedly referred to Plaintiff as an "Al-Qaeda terrorist" and made discriminatory statements to Plaintiff about this missing plane, such as "you couldn't crash the plane, so you and your brothers hid it" and "we didn't know you guys have your own air base."

74. Following the explosion of an apartment building in East Harlem on March 12, 2014, Mr. Peteio, Defendant Arama, and the other servers taunted Plaintiff, saying things like "I was told you were in Harlem last night" and "it looks like your brothers are going after small buildings." Again, on one occasion, Plaintiff was able to record his co-workers discriminating against him by telling him that "I can see where the project went bad" and by commenting that Plaintiff spent half a winter "in training camp" so that he could carry out acts of terror such as this.

75. On this last Memorial Day, May 26, 2014, two of Peter Luger's managers, Lenny Gozenpud ("Mr. Gozenpud") and Mike Sings ("Mr. Sings"), and Peter Luger's kitchen staff played a "trick" on Plaintiff. Knowing that eating pork was against Plaintiff's religion, Mr. Gozenpud, Mr. Sings, and the kitchen staff tricked him into eating a pork hot dog by telling him

it was a chicken hot dog.  When he bit into the hot dog, they all immediately started laughing. Plaintiff was horrified when he looked at the hot dog package and saw that he had just eaten pork.  Sick to his stomach, Plaintiff vomited approximately ten times that day from eating the pork hot dog.  Plaintiff brought this incident to the attention of another of Peter Luger's managers, Kristen Frittola, who did nothing in response.

76.     Finally, throughout Plaintiff's employment with Defendant Peter Luger, Defendant Arama and Mr. Peteio further discriminated against him by refusing to give him the amount of shifts to which he was entitled and also by refusing to give him the most profitable shifts.

77.     Specifically, Defendant Peter Luger has a policy wherein the number of shifts a server receives, and whether or not a server receives the most profitable shifts, is largely determined by seniority.  .

78.     Even though Plaintiff was an exemplary server with seniority over many of his colleagues, Defendant Arama and Mr. Peteio routinely shortchanged him, giving him only a few shifts and rarely allowing him to work the most profitable shifts.

79.     Through a letter dated July 21, 2014, Plaintiff complained to Defendants about this hostile work environment.  In retaliation for this complaint, Defendants reduced the number of his shifts, especially his profitable shifts, even further, causing Plaintiff economic harm in the process.

80.     In addition, when Plaintiff did work, Defendants overloaded his section, seating him much more than any of his colleagues.  Since, as noted above, Defendants required their servers to share all of their tips, these additional customers did not result in more money for Plaintiff, only more work.

### III.   Background Facts Relating to Plaintiff's FMLA Claim:

81.     In addition to failing to pay him his statutorily-required wages and in addition to subjecting Plaintiff to constant discrimination, Defendant Peter Luger also unlawfully interfered with Plaintiff's request to take FMLA leave.

82.     In or around mid-June 2014, Plaintiff wanted to take FMLA leave due to the fact that his wife was pregnant, with an expected due date of late July 2014.  Accordingly, Plaintiff asked Defendant Arama about the possibility of taking six weeks of FMLA leave in the near future so that he could care for his newborn child.  Defendant Arama claimed to have never heard of FMLA leave and was thus of no help to Plaintiff.

83.     On June 26, 2014, Plaintiff called Defendant Rubenstein to discuss whether or not he could take FMLA leave.  During this conversation, Defendant Rubenstein refused to give Plaintiff his requested FMLA leave.  In fact, she even unlawfully threatened to fire Plaintiff for pursuing his rights under the FMLA.

84.     Specifically, during this conversation, Defendant Rubenstein made the following statements to Plaintiff:

- "But now, six weeks off that you want?  I don't know what to say, but I will have to find another server.  Is that what you want?"

- "Listen, we've all had babies and we didn't have our mother, and those people took care of their babies for less than six weeks without their mother."

- "Everybody's had a baby and nobody's husband took off six weeks.  You better think about this again.  We don't go like this.  It's not going well with me.  I'm telling you that.  Okay?"

85.     During this conversation, Defendant Rubenstein flatly refused to give Plaintiff his FMLA leave.  Instead, Defendant Rubenstein stated that any time Plaintiff wanted to take off to care for his newborn child would have to come out of his three weeks of combined vacation and

sick days to which he was entitled pursuant to Defendant Peter Luger's collective bargaining agreement.

86.     Accordingly, Plaintiff took only three weeks off, using up his three weeks of combined vacation and sick days, instead of the originally planned six weeks.

87.     In addition, Plaintiff was forced to pay his niece $15.00 per hour to help care for his newborn child.

88.     During the first three weeks of his leave, he only needed his niece to help out sporadically, having her work approximately eight hours a week.

89.     However, following this three week period and because of Defendants' denial of his request for FMLA leave, Plaintiff was forced to go back to work. Accordingly, Plaintiff was forced to hire his niece full-time, having her help out approximately forty hours a week.

90.     Through a letter dated July 21, 2014, Plaintiff complained to Defendants about their FMLA violations. In retaliation for this complaint, Defendants again reduced the number of his shifts, especially his profitable shifts, even further, causing Plaintiff economic harm in the process.

91.     In addition, when Plaintiff did work, Defendants increasingly overloaded his section, seating him much more than any of his colleagues. Since, as noted above, Defendants required their servers to share all of their tips, these additional customers did not result in more money for Plaintiff, only more work.

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### *Unpaid Overtime Under the FLSA*

92.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.     29 U.S.C. § 207 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay or the minimum wage rate of pay, whichever is higher, for any hours worked exceeding forty in a workweek.

94.     As described above, Defendants are employers within the meaning of the FLSA while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

95.     Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

96.     Specifically, Defendants failed to compensate Plaintiff and FLSA Plaintiffs at any rate of pay, let along their overtime rates of pay, for the time they spent completing their side jobs before their shifts were formally scheduled to start.

97.     In addition, Defendants purported to take a tip credit by paying Plaintiff and FLSA Plaintiffs less than the minimum hourly wage.  Defendants, however, did not inform Plaintiff and FLSA Plaintiffs of the provisions of the tip credit subsection.

98.      Moreover, Defendants required Plaintiff and FLSA Plaintiffs to pool all of their tips at the end of a shift.  Defendants, however, improperly required Plaintiff and FLSA Plaintiffs to share their tips with other employees who do not regularly receive tips from Defendants' customers and who do not directly engage in customer service.

99.     Accordingly, Defendants improperly applied a tip credit to Plaintiff and FLSA Plaintiffs.  In doing so, Defendants' violated both the minimum wage and overtime provisions of the FLSA.

100.    Finally, Defendants required Plaintiff and FLSA Plaintiffs to wear uniforms while they were at work.  However, the cost of purchasing and maintaining these uniforms reduced

Plaintiff's and FLSA Plaintiffs' wages under the minimum wage rate and lowered the amount of overtime pay due to Plaintiff and FLSA Plaintiffs.

101.    Defendants willfully violated the FLSA.

102.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective standard rates of pay or the minimum wage rate, whichever is higher.

103.    In addition, Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' above-mentioned violation of the FLSA.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *Unpaid Minimum Wages Under the FLSA*

104.    Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

105.    29 U.S.C. § 206 requires employers to compensate their employees at a rate not less than the federally-mandated minimum wage rate.

106.    Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's minimum wage provisions.

107.    Specifically, Defendants failed to compensate Plaintiff and FLSA Plaintiffs at any rate of pay, let along the minimum wage rate of pay, for the time they spent completing their side jobs before their shifts were formally scheduled to start.

108.    In addition, Defendants purported to take a tip credit by paying Plaintiff and FLSA Plaintiffs less than the minimum hourly wage.  Defendants, however, did not inform Plaintiff and FLSA Plaintiffs of the provisions of the tip credit subsection.

109.    Moreover, Defendants required Plaintiff and FLSA Plaintiffs to pool all of their tips at the end of a shift.  Defendants, however, improperly required Plaintiff and FLSA Plaintiffs

24

to share their tips with other employees who do not regularly receive tips from Defendants' customers and who do not directly engage in customer service.

110.   Accordingly, Defendants improperly applied a tip credit to Plaintiff and FLSA Plaintiffs.  In doing so, Defendants' violated the minimum wage provisions of the FLSA.

111.   Finally, Defendants required Plaintiff and FLSA Plaintiffs to wear uniforms while they were at work.  However, the cost of purchasing and maintaining these uniforms reduced Plaintiff's and FLSA Plaintiffs' wages below the minimum wage rate.

112.   Defendants willfully violated the FLSA.

113.   At the least, Plaintiff and FLSA Plaintiffs are entitled to pay at the prevailing minimum wage rate for all hours worked per week.

114.   In addition, Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' above-mentioned violation of the FLSA.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
*Unpaid Overtime Under the NYLL and the NYCCRR*

115.   Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.   NYLL § 160 and 12 NYCCRR § 146-1.4 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay or the minimum wage rate of pay, whichever is higher, for any hours worked exceeding forty in a workweek.

117.   As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

118.    Plaintiff and Rule 23 Plaintiffs worked in excess of forty hours per week yet Defendants failed to compensate Plaintiff and Rule 23 Plaintiffs in accordance with the NYLL's and the NYCCRR's overtime provisions.

119.    Specifically, Defendants failed to compensate Plaintiff and Rule 23 Plaintiffs at any rate of pay, let along their overtime rates of pay, for the time they spent completing their side jobs before their shifts were formally scheduled to start.

120.    In addition, Defendants purported to take a tip credit by paying Plaintiff and Rule 23 Plaintiffs less than the minimum hourly wages.  Defendants, however, failed to provide Plaintiff and Rule 23 Plaintiffs with the tip credit notice, in writing and/or at the time of their hire, as required by the NYLL and the NYCCRR.

121.    Moreover, Defendants required Plaintiff and Rule 23 Plaintiffs to pool all of their tips at the end of a shift.  Defendants, however, improperly required Plaintiff and Rule 23 Plaintiffs to share their tips with other employees who do not regularly receive tips from Defendants' customers and who do not directly engage in customer service.

122.    Accordingly, Defendants' improperly applied a tip credit to Plaintiff and Rule 23 Plaintiffs.  In doing so, Defendants violated the minimum wage and overtime provisions of the NYLL and the NYCCRR and they failed to pay Plaintiff and Rule 23 Plaintiffs all of their earned wages.

123.    Defendants willfully violated the NYLL and the NYCCRR.

124.    Plaintiff and Rule 23 Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective standard rates of pay, or at the minimum wage rate, whichever is higher.

125.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the NYLL's and NYCCRR's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *Unpaid Minimum Wages Under the NYLL and the NYCCRR*

126.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

127.    NYLL § 652 and 12 NYCCRR § 141-1.3 require employers to compensate their employees at a rate not less than $7.15 an hour on and after January 1, 2007; $7.25 an hour on and after July 24, 2009; and $8.00 an hour on and after December 31, 2013.

128.    Defendants failed to compensate Plaintiff and Rule 23 Plaintiffs in accordance with the NYLL's and NYCCRR's minimum wage provisions.

129.    Specifically, Defendants failed to compensate Plaintiff and Rule 23 Plaintiffs at any rate of pay, let along the minimum wage rate of pay, for the time they spent completing their side jobs before their shifts were formally scheduled to start.

130.    In addition, Defendants purported to take a tip credit by paying Plaintiff and Rule 23 Plaintiffs less than the minimum hourly wages.  Defendants, however, failed to provide Plaintiff and Rule 23 Plaintiffs with the tip credit notice, in writing and the time of their hire, as required by the NYLL and the NYCCRR.

131.    Moreover, Defendants required Plaintiff and Rule 23 Plaintiffs to pool all of their tips at the end of a shift.  Defendants, however, improperly required Plaintiff and Rule 23 Plaintiffs to share their tips with other employees who do not regularly receive tips from Defendants' customers and who do not directly engage in customer service.

132.    Accordingly, Defendants' improperly applied a tip credit to Plaintiff and Rule 23 Plaintiffs.  In doing so, Defendants violated both the minimum wage and overtime provisions of the NYLL and the NYCCRRR and they failed to pay Plaintiff and Rule 23 Plaintiffs all of their earned wages.

133.    Defendants willfully violated the NYLL and the NYCCRR.

134.    At the least, Plaintiff and Rule 23 Plaintiffs are entitled to pay at the minimum wage rate for all hours worked per week.

135.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the NYLL's and NYCCRR's minimum wage provisions.

## FIFTH CLAIM OF RELIEF AGAINST ALL DEFENDANTS
### *Failure to Pay Wages Under the NYLL and the NYCCRR*

136.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

137.    NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

138.    Defendants failed to compensate Plaintiff and Rule 23 Plaintiffs at their regular rates of pay for each hour that they worked in accordance with their terms of employment.

139.    Defendants' actions were in willful violation of the NYLL.

140.    Plaintiff and Rule 23 Plaintiffs are entitled to recover, at their respective regular rates of pay, for all hours that they worked for Defendants but for which they were not compensated.

141.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorney's fees for Defendants' failure to pay Plaintiff and Rule 23 Plaintiffs their wages in accordance with the agreed terms of employment.

## SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *Violation of the NYLL's and the NYCCRR's Spread of Hours Requirement*

142.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

143.    NYLL § 652 and 12 NYCCRR § 146-1.6 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

144.    Defendants willfully failed to provide Plaintiff and Rule 23 Plaintiffs with spread of hours pay when Plaintiff's and Rule 23 Plaintiffs' spread of hours exceeded ten hours for a particular workday.

145.    Plaintiff and Rule 23 Plaintiffs are entitled to this extra hour of pay, at the minimum wage rate, for all days in which they worked in excess of ten hours.

146.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' failure to pay Plaintiff and Rule 23 Plaintiffs the required spread of hours pay.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *Failure to Provide Uniform Maintenance Pay Under the NYLL and the NYCCRR*

147.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

148. The NYLL and the NYCCRR provide that "[w]here an employer does not maintain required uniform for any employee, the employer shall pay the employee, in addition to the employee's agreed rate of pay, uniform maintenance pay . . . ." 12 NYCCRR § 146-1.7.

149. Defendants required their employees to wear "uniforms," as defined by the NYLL and the NYCCRR. These uniforms required special treatment, including, but not limited to: ironing, dry cleaning, daily washing, and commercial laundering.

150. Defendants did not maintain the required uniforms for their employees and they failed to provide their employees with the statutorily-required uniform maintenance pay.

151. Defendants willfully violated the NYLL and the NYCCRR.

152. In addition to receiving damages for Defendants' failure to provide Plaintiff and Rule 23 Plaintiffs with the required uniform maintenance pay, Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees.

### EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
*Failure to Reimburse for the Purchasing of Uniforms Under the NYLL and the NYCCRR*

153. Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

154. The NYLL and the NYCCRR provide that "[w]hen an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday." 12 NYCCRR § 146-1.8.

155. Defendants required their employees to wear "uniforms," as defined by the NYLL and the NYCCRR.

156. Plaintiff and Rule 23 Plaintiffs routinely needed to purchase the required uniforms. Defendants, however, completely failed to reimburse Plaintiff and Rule 23 Plaintiffs for these purchases.

157.   Defendants willfully violated the NYLL and the NYCCRR.

158.   As a result of Defendants' above-mentioned violation of the NYLL and the NYCCRR, Plaintiff and Rule 23 Plaintiffs are entitled to recover for reimbursements for this money spent, liquidated damages, interest, and attorneys' fees.

### NINTH CLAIM FOR RELEIF AGAINST ALL DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

159.   Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

160.   NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

161.   As described above, Defendants willfully failed to provide Plaintiff and Rule 23 Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

162.   Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $100 for each failure of this sort.

### TENTH CLAIM FOR RELEIF AGAINST ALL DEFENDANTS
*Conversion*

163.   Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

164.   Plaintiff and Rule 23 Plaintiffs had superior rights to and/or ownership of the tips they received that Defendants distributed to its employees pursuant to its invalid tip pooling arrangement.

165.   Plaintiff's and Rule 23 Plaintiffs' tips ae specifically identifiable and are for a sum certain.

166.    Defendants improperly distributed Plaintiff's and Rule 23 Plaintiffs' tips for Defendants own use, thereby interfering with Plaintiff and Rule 23 Plaintiffs' right of possession to the tips that were lawfully theirs.

As a result of Defendants' blatant disregard for Plaintiff's and Rule 23 Plaintiffs' property rights, Defendants are liable to Plaintiff and Rule 23 Plaintiffs for monetary and punitive damages.

## ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Race Discrimination in Violation of Section 1981*

167.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

168.    Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc.  However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

169.    Section 1981 guarantees every person within the jurisdiction of the United States the same right "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

170.    Plaintiff, a dark-skinned male who was born in Bangladesh, is a "person" entitled to the rights set forth in Section 1981.

171.    Defendants discriminated against Plaintiff on the basis of his race in violation of Section 1981 by creating, ratifying, condoning, or otherwise contributing to a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiff by Defendants managers and other employees and by Defendants taking tangible adverse employment actions against him.

32

172.     As a direct and proximate cause of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

173.     Additionally, Defendants' unlawful discriminatory conduct constitutes malicious, willful, and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of Section 1981*

174.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

175.     Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc.  However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

176.     Section 1981 guarantees every person within the jurisdiction of the United States the same right "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

177.     Plaintiff, a dark-skinned male who was born in Bangladesh, is a "person" entitled to the rights set forth in Section 1981.

178.     Defendants retaliated against Plaintiff after he made good faith complaints of unlawful discrimination by taking adverse employment actions against him that have altered the terms and conditions of his employment.

179.     As a direct and proximate cause of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

180.    Additionally, Defendants' unlawful retaliation constitutes malicious, willful, and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

### THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Race Discrimination in Violation of the NYSHRL*

181.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

182.    Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc.  However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

183.    The NYSHRL makes it unlawful for an employer to discriminate against an individual in compensation or in the terms, conditions or privileges of employment because of the individual's race.

184.    Plaintiff is an "individual" and an "employee" and Defendants are "employers" under the NYSHRL.

185.    Plaintiff, a dark-skinned male who was born in Bangladesh, is an individual entitled to the rights set forth in the NYSHRL.

186.    As described above, Defendants subjected Plaintiff to a severe or pervasive hostile work environment that persisted throughout his employment with Defendants because of his race.

187.    Defendants acted willfully and with deliberate and/or reckless disregard for Plaintiff's rights under the NYSHRL.

188.     As a direct and proximate cause of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

### FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*National Origin Discrimination in Violation of the NYSHRL*

189.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

190.     Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc.  However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

191.     The NYSHRL makes it unlawful for an employer to discriminate against an individual in compensation or in the terms, conditions or privileges of employment because of the individual's national origin.

192.     Plaintiff is an "individual" and an "employee" and Defendants are "employers" under the NYSHRL.

193.     Plaintiff, a dark-skinned male who was born in Bangladesh, is an individual entitled to the rights set forth in the NYSHRL.

194.     Defendants and their employees were aware that Plaintiff was born in Bangladesh.

195.     As described above, Defendants subjected Plaintiff to a severe or pervasive hostile work environment that persisted throughout his employment with Defendants because of his national origin.

196.     Defendants acted willfully and with deliberate and/or reckless disregard for Plaintiff's rights under the NYSHRL.

197.     As a direct and proximate cause of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

## FIFTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Religious Discrimination in Violation of the NYSHRL*

198.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

199.     Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc. However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

200.     The NYSHRL makes it unlawful for an employer to discriminate against an individual in compensation or in the terms, conditions or privileges of employment because of the individual's religion.

201.     Plaintiff is an "individual" and an "employee" and Defendants are "employers" under the NYSHRL.

202.     Plaintiff, a devout Muslim, is an individual entitled to the rights set forth in the NYSHRL.

203.     As described above, Defendants subjected Plaintiff to a severe or pervasive hostile work environment that persisted throughout his employment with Defendants because of his religion.

36

204.     Defendants acted willfully and with deliberate and/or reckless disregard for Plaintiff's rights under the NYSHRL.

205.     As a direct and proximate cause of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

### SIXTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
#### *Retaliation in Violation of the NYSHRL*

206.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

207.     Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc.  However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

208.     The NYSHRL makes it unlawful for an employer to discharge, expel, or otherwise discriminate against any person because that person opposed any practice the statute makes unlawful, or filed a complaint or testified or assisted in any proceeding under the statute.

209.     Plaintiff is an "individual" and an "employee" and Defendants are "employers" under the NYSHRL.

210.     As described above, Defendants retaliated against Plaintiff for engaging in activity protected by the statute.

211.     Defendants acted willfully and with deliberate and/or reckless disregard for Plaintiff's rights under the NYSHRL.

212.     As a direct and proximate cause of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

## SEVENTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
## RUBENSTEIN, SPIERA, AND ARAMA
### *Aiding and Abetting Discrimination in Violation of the NYSHRL*

213.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

214.    The NYSHRL makes it an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden by the statute, or to attempt to do so.

215.    Defendants Rubenstein, Spiera, and Arama aided and abetted and/or incited the above-described discriminatory practices of Peter Luger of Long Island, Inc. and/or each other that are proscribed by the NYSRHL.

216.    Defendants acted willfully and with deliberate and/or reckless disregard for Plaintiff's rights under the NYSHRL.

217.    As a direct and proximate cause of Defendants Rubenstein, Spiera, and Arama aiding and abetting unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress and economic damages.

## EIGHTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unlawful Interference with FMLA Rights*

218.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

219.    Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc. However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

220. The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of or the attempt to exercise, his or her FMLA rights.

221. Plaintiff is an "individual" and Defendants are "employers" as defined by the FMLA.

222. As described above, Defendants unlawfully interfered with and/or denied Plaintiff's request for FMLA leave, thus violating his rights under the statute.

223. As a direct and proximate cause of Defendants' unlawful interference with Plaintiff's FMLA rights, Plaintiff has suffered and continues to suffer economic damages.

## NINETEENTH CLAIM FOR RLEIEF AGAINST DEFENDANTS
### *Retaliation in Violation of the FMLA*

224. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

225. Plaintiff brings this Claim for Relief against the following parties: (1) Peter Luger of Long Island, Inc.; (2) Defendant Rubenstein; (3) Defendant Spiera; and (4) Defendant Arama. Plaintiff is not currently bringing this claim against Peter Luger, Inc. However, for the sake of clarity and convenience, Plaintiff will continue to refer to the above-named four Defendants collectively as "Defendants."

226. The FMLA prohibits an employer from retaliating against an employee for exercising his rights under the statute.

227. Plaintiff is an "individual" and Defendants are "employers" as defined by the FMLA.

228. As described above, Defendants unlawfully retaliated against Plaintiff for exercising his rights under the statute.

229. As a direct and proximate cause of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer economic damages.

## DEMAND FOR A JURY TRIAL

230. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against the Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against any individual for participating in this lawsuit in any form;

d. Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23;

f.  Designation of Plaintiff and their counsel as class/collective action representatives under the FLSA and the FRCP;

g.  All damages that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for the Defendants' unlawful payment practices;

h.  Grant an award of liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

i.  Award Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiff;

j.  Grant an award of pre-judgment and post-judgment interest, as provided by law;

k.  Grant an award of damages to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment in connection with his claims;

l.  Grant an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with his claims;

m.  Grant an award of punitive damages, as provided by law; and

n.      Grant such other and further relief, including equitable relief, as the Court may deem just and proper.

Dated: October 7, 2014
      Great Neck, New York

              Respectfully submitted,
              BORRELLI & ASSOCIATES, P.L.L.C.
              *Attorneys for Plaintiff*
              1010 Northern Boulevard, Suite 328
              Great Neck, New York 11021
              Tel. (516) 248-5550
              Fax. (516) 248-6027

By:      _____/s/Todd Dickerson_____
              TODD DICKERSON, ESQ (TD 0372)
              ALEXANDER T. COLEMAN. ESQ (AC 8151)
              MICHAEL J. BORRELLI, ESQ (MB 8533)