UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTAF CHOWDHURY, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>     - against -<br><br>PETER LUGER, INC., and PETER LUGER OF LONG ISLAND, INC., and AMY RUBENSTEIN, in her individual and professional capacities, and MARILYN SPIERA, in her individual and professional capacities, and COSTA ARAMA, in his individual and professional capacities,<br><br>        Defendants. | ECF Case<br><br>**Case No.: 14-cv-5880 (JS) (ARL)** |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT AND TO STRIKE THE CLASS AND COLLECTIVE ACTION ALLEGATIONS

**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, New York  10017
Telephone: (212) 878-7900
Facsimile: (212) 692-0940

*On Brief*:

Carolyn D. Richmond, Esq.
Glenn S. Grindlinger, Esq.
Jason B. Jendrewski, Esq.

28692264v3

# **TABLE OF CONTENTS**

**Page(s)**

**PRELIMINARY STATEMENT** ........................................................................................... 1

**LEGAL ARGUMENT** ............................................................................................................ 2

    I.    PLAINTIFF HAS FAILED TO PLEAD VIABLE UNIFORM CLAIMS AND THEREFORE THEIR DISMISSAL IS REQUIRED ................................................. 2

    II.    *RES JUDICATA* AND A FUNDAMENTAL CONFLICT OF INTEREST WITH THE PUTATIVE CLASS AND COLLECTIVE MEMBERS REQUIRE THE STRIKING OF PLAINTIFF'S CLASS AND COLLECTIVE ACTION ALLEGATIONS ................................................................................................... 6

        A.    *Res Judicata* Requires the Striking of Plaintiff's Class and Collective Claims Because the Same Claims Were at Issue in a Prior Action and Plaintiff's Claims Arose Prior to the Entry of Judgment in that Prior Action ..................... 6

        B.    Plaintiff's Class and Collective Allegations Should Be Stricken Because His Allegations Against Putative Class and Collective Members Demonstrate a Fundamental Conflict of Interest That Discovery Cannot Cure ......................... 8

**CONCLUSION** ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allende v. PS Brother Gourmet, Inc., et al.*,
  No. 11 Civ. 05427 (AJN-KNF), Docket No. 66 (S.D.N.Y. filed Feb. 1, 2013) .................... 3-5

*Ayres v. 127 Rest. Corp.*,
  12 F. Supp. 2d 305 (S.D.N.Y. 1998)................................................................................ 2-5

*Cao v. Wu Liang Ye Lexington Rest., Inc.*,
  No. 08 Civ. 3725 (DC), 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010)............................... 3-5

*Chan v. Sung Yue Tung Corp.*,
  No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007).................................. 2-4

*Chowdhury v. Duane Reade, Inc.*,
  No. 06 Civ. 2295 (GEL), 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007).....................................9

*Gilinsky v. Columbia Univ.*,
  62 F.R.D. 178 (S.D.N.Y. 1974) .............................................................................................9

*Gonzalez v. City of New York*,
  396 F. Supp. 2d 411 (S.D.N.Y. 2005).....................................................................................7

*Hai Ming Lu v. Jing Fong Rest., Inc.*,
  503 F. Supp. 2d 706 (S.D.N.Y. 2007)..................................................................................3, 5

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322, 328 (1955)................................................................................................... 6-7

*Maharaj v. BankAmerica Corp.*,
  128 F.3d 94 (2d Cir. 1997)......................................................................................................7

*Nicholson v. Twelfth Street Corp.*,
  No. 09 Civ. 198 (HB), 2010 WL 1780957 (S.D.N.Y. May 4, 2010).................................... 4-5

*Ramirez v. CSJ & Co.*,
  No. 06 Civ. 13677 (LAK), 2007 WL 700831 (S.D.N.Y. Mar. 6, 2007).............................. 4-5

*RBC Nice Bearings, Inc. v. SKF USA Inc.*,
  No. 06 Civ. 1880 (JCH), 2011 WL 754889 (D. Conn. Feb. 24, 2011).....................................7

*Roach v. T.L. Cannon Corp.*,
  889 F. Supp. 2d 364 (N.D.N.Y. 2012) ................................................................................ 3-4

28692264v3

*Sandoval v. Roadlink USA Pac., Inc.*,
  No. 10 Civ. 00973, 2011 WL 5443777 (C.D. Cal. Oct. 9, 2011) ......................................... 9-10

*Storey v. Cello Holdings, LLC*,
  347 F.3d 370 (2d Cir. 2003)......................................................................................................7

*Williams v. LexisNexis Risk Mgmt., Inc.*,
  No. 06 Civ. 241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) .................................................9

**OTHER AUTHORITIES**

Guidance for the New York State Hospitality Indus. on Uniforms
  New York State Dep't of Labor (Dec. 2013), *available at*
  http://www.labor.ny.gov/formsdocs/wp/LS400.pdf........................................................................4

N.Y.D.O.L Op. Ltr (Feb. 6, 2008) ................................................................................................ 4-5

## **PRELIMINARY STATEMENT**

Defendants Peter Luger, Inc., Peter Luger of Long Island, Inc., Amy Rubenstein, Marilyn Spiera, and Costa Arama (collectively, "Defendants") submit this Reply Memorandum of Law in Further Support of their Motion to Partially Dismiss the Amended Complaint that was filed by plaintiff Altaf Chowdhury ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to Strike the Class and Collective Action Allegations therein.

As discussed in Defendants' moving papers, Plaintiff is a server at Peter Luger Steakhouse in Great Neck, New York. In addition to asserting individual claims of discrimination and harassment, Plaintiff seeks to bring several wage and hour claims on behalf of servers, bartenders, waiters, and wait staff employed at Defendants' Great Neck location on or after February 28, 2014 ("Great Neck Class"), as well as servers, bartenders, waiters, and wait staff employed at Peter Luger Steakhouse in Brooklyn, New York, within the applicable statute of limitations period ("Brooklyn Class"). However, Plaintiff has never worked at the Brooklyn location. The Great Neck Class is unionized; the Brooklyn Class is not.

Defendants seek the dismissal of Plaintiff's uniform claims, as Plaintiff has failed to plead viable claims and has attempted to rescue these claims by relying upon outdated precedent that is factually distinguishable. Because Plaintiff's own allegations establish that he has not been required to purchase and maintain a "uniform" under applicable law, dismissal is proper, and a fact-specific inquiry into Plaintiff's allegations is not required.

Defendants also request that Plaintiff's class and collective allegations on behalf of the Great Neck Class be stricken because these same claims were litigated in *Donnelly v. Peter Luger of Long Island, Inc.*, 2:13-cv-01377 (LDW-ARL) (E.D.N.Y.) ("Donnelly Action"). Plaintiff is precluded by *res judicata* from asserting these claims because they were adjudicated in the Donnelly Action or, at the very least, could have been raised therein. These claims arose,

and even were asserted by Plaintiff, prior to the entry of judgment in the Donnelly Action. Curiously, Plaintiff fails to address any of the factors that determine whether *res judicata* bars a subsequent action, and, rather, relies erroneously on the settlement of the Donnelly Action.

Defendants further maintain that all of Plaintiff's class and collective allegations should be stricken because there is a fundamental conflict of interest between Plaintiff and the persons who he seeks to represent. Discovery cannot cure the fact that Plaintiff has accused the very persons he seeks to represent of engaging in deplorable acts of discrimination and harassment towards him. Therefore, Plaintiff cannot possibly be similarly situated to the putative class and collective members or an adequate representative of them. Accordingly, Plaintiff's class and collective allegations should be stricken.

## LEGAL ARGUMENT

### I. PLAINTIFF HAS FAILED TO PLEAD VIABLE UNIFORM CLAIMS AND THEREFORE THEIR DISMISSAL IS REQUIRED

Notwithstanding Plaintiff's speculation, Defendants did not ignore any case law applicable to Plaintiff's uniform claims, and Defendants disagree with Plaintiff's assertion that courts have "widely disagreed" on what constitutes a required uniform within the meaning of New York law. Rather, Plaintiff is attempting to mislead this Court by primarily relying upon two cases that predate all of the cases cited by Defendants as well as current guidance provided by the New York State Department of Labor ("NYSDOL"), the government agency charged with enforcing the applicable provisions of law. The cases upon which Plaintiff relies—*Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998) and *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)—are factually distinguishable from the allegations set forth in Plaintiff's Complaint. The unique facts in those cases dictated the

2

determinations that were made.[1]

First, *Ayres* and *Chan* involve the unique factual situation where some of the articles of clothing required to be worn by employees were purchased by their employer—including, for example, aprons in *Ayres* and green jackets or vests in *Chan*.  Plaintiff failed to mention this fact.  Plaintiff also failed to mention that, *in Ayres*, employees had to wear the apron (as well as a vest and a tie) in addition to the white shirt, khakis, black shoes, and black socks that Plaintiff stated.  Plaintiff further failed to mention that the white shirt had to be starched, the khakis had to be pressed, and the black shoes had to be shined.  The courts in *Ayres* and *Chan* appear to have grouped all required articles of clothing together when considering whether they constituted uniforms, as the court in *Ayres* recognized that "most of the articles of clothing at issue arguably 'may be worn as part of an employee's ordinary wardrobe . . . .'"  *Ayres*, 12 F. Supp. 2d at 310.  Here, none of the required clothing was purchased by Defendants, no unique articles of clothing were required that would possibly make the sum of those items a uniform under New York law, and no specific requirements for the articles of clothing were imposed.

Second, in *Ayres*, the employer informed its employees that "[i]t is their responsibility to maintain [their] service attire: shirts crisp, lightly starched, pants clean and pressed, shoes polished and ties dry cleaned when they become soiled."  12 F. Supp. 2d at 310 (quoting plaintiff's exhibit).  In denying summary judgment, the court specifically noted that dry cleaning costs were imposed on employees.  Here, Plaintiff does not make any allegations that Defendants required him to maintain the purported uniform in a specific manner.

---

[1] Since the decisions in *Ayres* and *Chan* were issued in 1998 and early 2007, respectively, the courts have been rather consistent in terms of what constitutes a required uniform.  *See, e.g.,* Docket Number 66, *Allende v. PS Brother Gourmet, Inc., et al.*, No. 11 Civ. 05427 (AJN-KNF), slip op. at 8 (S.D.N.Y. filed Feb. 1, 2013); *Roach v. T.L. Cannon Corp.*, 889 F. Supp. 2d 364, 373 (N.D.N.Y. 2012); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010); *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007).

Third, *Ayres* and *Chan* predate all of the cases upon which Defendants rely as well as the guidance issued by the NYSDOL.  *See* "Guidance for the New York State Hospitality Industry on Uniforms," NYSDOL, Dec. 2013, *available at* http://www.labor.ny.gov/formsdocs/wp/LS400.pdf (advising employers that black pants and a white dress shirt is not a uniform); N.Y.D.O.L. Op. Ltr. (Feb. 6, 2008) (advising employers that black dress slacks and a specific color button down shirt is not a uniform).  Here, Plaintiff only alleges that he is required to wear black slacks, a white dress shirt, a black bow tie, and black shoes.  These articles of clothing do not constitute a uniform under current New York Law.  *See id.* (advising that black slacks and white dress shirts do not constitute a uniform); *Cao*,  2010 WL 4159391, at *5 (finding that a tie does not constitute a uniform); *Roach*, 889 F. Supp. 2d at 373 (finding that black shoes do not constitute a uniform).

Contrary to Plaintiff's assertion, a motion to dismiss <u>is</u> the appropriate vehicle to seek dismissal of such uniform claims because Plaintiff has not adequately plead them.  Therefore, the "fact-specific inquiry" that Plaintiff desires is neither appropriate nor required in this case.  Plaintiff's reliance on *Ayres*, *Nicholson v. Twelfth Street Corp.*, No. 09 Civ. 1984 (HB), 2010 WL 1780957 (S.D.N.Y. May 4, 2010), and *Ramirez v. CSJ & Co.*, No. 06 Civ. 13677 (LAK), 2007 WL 700831 (S.D.N.Y. Mar. 6, 2007), for the contention that the trier of fact should decide whether Plaintiff has been required to wear a uniform under New York law is misplaced.  Critically, in *Ayres*, summary judgment was denied because employees faced tangible consequences for failing to wear all articles of clothing, employees had specific maintenance requirements, and some items were provided by the employer, including an apron, which obviously is not ordinary street clothing.  *See Allende*, No. 11 Civ. 05427 (AJN-KNF), slip op. at 8-9 (distinguishing *Ayres* because the employer required starched white shirts, pressed khaki

4

pants, and shined black shoes, and finding such attire incomparable to a black shirt, black pants, and cap).

The other cases cited by Plaintiff—*Nicholson* and *Ramirez*—are irrelevant as both cases involved the requirement that employees wear t-shirts bearing their employer's logos. This hybrid scenario involves basic, street clothing, such as a t-shirt, but arguably a required uniform because the t-shirt contains a business logo. For this reason, the courts decided that the question was probably better decided by a trier of fact than as a matter of law. Here, there is no allegation that Plaintiff has been required to wear any articles of clothing that contain Defendants' logo. *See Allende*, No. 11 Civ. 05427 (AJN-KNF), slip op. at 8-9 (distinguishing *Nicholson* and *Ramirez* because the clothing at issue in those cases bore the employer's logo).

The fact remains that courts and the New York Department of Labor have overwhelmingly held that the clothes that Plaintiff alleges he is required to wear do not constitute a "uniform" under applicable law.[2] *See, e.g., Allende*, No. 11 Civ. 05427 (AJN-KNF), slip op. at 8 (holding that black shirts, black pants and a cap that employees were required to wear did not constitute a uniform under federal or New York law); *Lu*, 503 F. Supp. 2d at 712 (holding that "white button-down shirts, black dress pants, black socks, and black leather shoes" that employees were required to wear did not qualify as a "uniform" under New York law); *Cao*, 2010 WL 4159391, at *5 (finding that a tie is considered ordinary wardrobe and, therefore, is not part of any uniform); N.Y.D.O.L. Op. Ltr. (Feb. 6, 2008) (explaining that an employer's requirement that employees wear black dress slacks and a specific color button down shirt does

---

[2] Plaintiff's Amended Complaint does not allege any uniform claim under the Fair Labor Standards Act ("FLSA") or other federal law. Plaintiff's halfhearted attempt to add such a claim in his opposition to the instant motion is both improper and misplaced. Should Plaintiff formally amend his complaint to add such a claim, Defendants will address it accordingly.

5

not concern a uniform under New York law because the pants and shirt "appear . . . to be of the type that can be worn as part of a normal wardrobe").

Accordingly, Plaintiff's uniform claims should be dismissed.

## II. *RES JUDICATA* AND A FUNDAMENTAL CONFLICT OF INTEREST WITH PUTATIVE CLASS AND COLLECTIVE MEMBERS REQUIRE STRIKING PLAINTIFF'S CLASS AND COLLECTIVE ACTION ALLEGATIONS

### A. *Res Judicata* Requires Striking Plaintiff's Class and Collective Claims Because the Same Claims Were at Issue in a Prior Action and Plaintiff's Claims Arose Prior to the Entry of Judgment in that Prior Action

Contrary to Plaintiff's assertions, Plaintiff is barred by *res judicata* from pursuing his class and collective claims on behalf of the Great Neck Class. Plaintiff simply is mistaken as to law and the import of the Donnelly Action. Plaintiff appears to confuse the *res judicata* effect of the Donnelly Action with the separate, independent effect of the release of claims pursuant to the settlement agreement that was executed in the Donnelly Action (and which Defendants do not raise in the instant motion). Defendants do not take the position that they are forever immunized from future violations, as Plaintiff suggests. However, Defendants <u>are</u> immunized from the claims that Plaintiff seeks to assert on behalf of the Great Neck Class.

First and foremost, for *res judicata* purposes, the relevant date is the date of the entry of judgment in the prior action, not the date that the settlement of the prior action was reached or the dates used to define the settlement class in the prior action. Indeed, the very case, upon which Plaintiff relies, specifically states that it is the "judgment [that] precludes recovery on claims arising prior to its entry . . . ." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). In *Lawlor*, the Supreme Court found that the second action was not barred by *res judicata* because all of the conduct complained of occurred subsequent to the judgment in the first action. *See id*. In other words, the alleged injuries began several months after the dismissal of the complaint in the first action. *See id*. at 325.

Here, Plaintiff seeks to litigate claims arising <u>prior</u> to the entry of judgment in the Donnelly Action. Indeed, the Donnelly Action was not dismissed until December 13, 2014, the effective date set forth in Judge Wexler's November 13, 2014, Order. Yet Plaintiff seeks to litigate violations of the FLSA and/or New York Labor Law ("NYLL") that purportedly occurred prior to December 13, 2014. However, Plaintiff is barred from pursuing these claims on behalf of the Great Neck Class. It is December 13, 2014—the date of the final judgment on the merits—that is the operative date for *res judicata* purposes, not February 27, 2014. *See Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 415 n.3 (S.D.N.Y. 2005). Remarkably, despite knowing about the Donnelly Action, Plaintiff initiated the instant lawsuit on October 7, 2014, while the Donnelly Action was still pending and more than two months before judgment was entered.[3]

Plaintiff cites *Maharaj v. BankAmerica Corp.*, 128 F.3d 94 (2d Cir. 1997) for the proposition that *res judicata* does not apply to a second action if it concerns a transaction that occurred after the commencement of the first action. However, in *Maharaj*, the Second Circuit also explained that "the first judgment will preclude a second suit [] when it involves the same 'transaction' or connected series of transactions as the earlier suit . . . ." 128 F.3d at 98. Here, the instant action involves the same transaction or series of transactions as the Donnelly Action. Indeed, Plaintiff alleges the same FLSA and/or NYLL violations at issue in the Donnelly Action. Therefore, Plaintiff's class and collective claims involve the same transaction or connected series

---

[3] Plaintiff also cites *Storey v. Cello Holdings, LLC*, 347 F.3d 370 (2d Cir. 2003), in further support of his contention that *res judicata* does not bar his claims for unlawful acts arising after February 27, 2014. Like *Lawlor*, this case similarly "stand[s] for the prospect that claims arising subsequent to the <u>entry of judgment</u> in a prior action are not barred by *res judicata*." *RBC Nice Bearings, Inc. v. SKF USA Inc.*, No. 06 Civ. 1880 (JCH), 2011 WL 754889, at *3 (D. Conn. Feb. 24, 2011) (emphasis added). As stated above, here, Plaintiff's claims arose prior to the entry of judgment in the Donnelly Action. Therefore, Plaintiff's reliance on *Storey* is misplaced. *See id*.

7

28692264v3

of transactions as the Donnelly Action, and *res judicata* precludes Plaintiff from bringing them in the instant matter.

Curiously, Plaintiff failed to address any of the factors that actually determine whether *res judicata* bars a subsequent action. As Defendants stated in their moving papers, *res judicata* precludes Plaintiff from re-litigating the class and collective claims on behalf of the Great Neck Class because: (1) the dismissal of the Donnelly Action was a final judgment on the merits; (2) the Donnelly Action involved the same litigants as the case at bar; (3) the court in the Donnelly Action was of competent jurisdiction; and (4) the Donnelly Action concerned the same wage and hour claims as the case at bar. Plaintiff does not dispute these contentions. Furthermore, even if some of Plaintiff's class and collective claims were not adjudicated in the Donnelly Action, all of Plaintiff's claims are sufficiently related to the claims litigated in the Donnelly Action such that they should have been asserted in that case. Therefore, for these reasons, this Court should strike Plaintiff's class and collective action allegations on behalf of the Great Neck Class.

      **B.**    **Plaintiff's Class and Collective Allegations Should Be Stricken Because His Allegations Against Putative Class and Collective Members Demonstrate a <u>Fundamental Conflict of Interest That Discovery Cannot Cure</u>**

Plaintiff's exaggerated simplification of Defendants' argument—namely, by asserting that Defendants have speculated, without any foundation, that "Plaintiff might, potentially, dislike some of the putative class/collective members"—is absurd. Indeed, Plaintiff, in his own pleadings, accuses members of the putative class and collective actions of engaging in deplorable acts of discrimination and harassment towards him because of his race, national origin, and religion. For example, Plaintiff claims that these persons referred to him as an Al-Qaeda terrorist following the disappearance of Malaysia Airlines Flight 380, taunted him after the explosion of an apartment building in East Harlem, and tricked him into eating a pork hot dog. Ironically, Plaintiff is attempting to downplay the significance of the allegations that he has made against

8

28692264v3

his co-workers when it suits him (*i.e.*, to avoid the dismissal of his class and collective allegations). The old proverb comes to mind: "You can't have your cake and eat it too."

The conflict of interest is not speculative, as Plaintiff contends; it is fundamental and cannot be avoided. Unless Plaintiff is willing to withdraw his claims of discrimination and harassment, discovery in this matter will not change the obvious fact that there is a fundamental conflict of interest between Plaintiff and the persons who he seeks to represent. Surely, Plaintiff will not downplay his allegations against the putative class and collective members if and when he cross-examines them. In fact, in order to prevail on his individual claims, he will necessarily have to prove that the persons who he seeks to represent are not credible.

Plaintiff cites four cases in support of his contention that the fact that Plaintiff has additional, individual claims against Defendants does not put him in conflict with the putative class and collective. All four of these cases are inapposite. Critically, in all of the cases cited—*Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295 (GEL), 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007); *Gilinsky v. Columbia Univ.*, 62 F.R.D. 178 (S.D.N.Y. 1974); *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 06 Civ. 241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007); and *Sandoval v. Roadlink USA Pac., Inc.*, No. 10 Civ. 00973, 2011 WL 5443777 (C.D. Cal. Oct. 9, 2011)—the individual claims at issue did not contain any allegations against the putative class and/or collective action members. Moreover, two of the cases actually support Defendants' position that Plaintiff is precluded from representing the putative class and collective members. For example, in *Gilinsky*, the court—in the very paragraph above the portion that Plaintiff cites— declared that "adequate representation cannot exist if there is antagonism between the representative and the class she represents." 62 F.R.D. at 180. Similarly, in *Sandoval*, the court explained that adequate representation depends on an absence of antagonism and that the class

9

representative must not have interests antagonistic to the unnamed class members. 2011 WL 5443777, at *5. Here, based on the allegations set forth in Plaintiff's Complaint alone, there clearly is antagonism between Plaintiff and the persons who he seeks to represent.

Given the nature and severity of Plaintiff's allegations against his co-workers, the conflict of interest is so fundamental that Plaintiff cannot possibly be similarly situated to the putative class and collective members or be considered an adequate representative of them. For these reasons, and as set forth in Defendants' moving papers, the Court should strike all of Plaintiff's class and collective action allegations.

## CONCLUSION

For the reasons set forth in Defendants' moving papers and above, the Court should partially dismiss the Amended Complaint, strike Plaintiff's class and collective action allegations, and grant such other and further relief as it deems just and proper.

Respectfully submitted:

Dated: New York, New York
January 15, 2015

FOX ROTHSCHILD LLP

By: /s/ Glenn S. Grindlinger
Carolyn D. Richmond, Esq.
Glenn S. Grindlinger, Esq.
Jason B. Jendrewski, Esq.
100 Park Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 878-7900
Facsimile: (212) 692-0940
*Attorneys for Defendants*

10

28692264v3